UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRISHA N. CARRICO, | |
| Plaintiff, | |
| v. | CASE NO. 3:20-CV-1039-MGG |
| BOARD OF COMMISSIONERS OF ST. JOSEPH COUNTY, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Trisha Carrico filed the instant action alleging that she was the recipient of unwanted sexual advances from Defendant Muhammad Shabazz ("Shabazz") while she was employed with the St. Joseph County Board of Voter Registration (the "Board"). Carrico ultimately resigned because of Shabazz's behavior.

Carrico's operative second amended complaint alleges sexual harassment in violation of Title VII of the Civil Rights Act as well as sex discrimination claims under 42 U.S.C. §§ 1983, 1985, and 1986 to redress violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. [DE 35 at 5, ¶¶ 32-35]. Pending and ripe before the Court is a motion to dismiss Carrico's second amended complaint filed by two of the Defendants: the St. Joseph County Democratic Party ("SJCDP") and the SJCDP Chairman Stan Wruble ("Wruble") (referred to collectively as "the SJCDP Defendants"). The SJCDP Defendants seek to dismiss (1) Carrico's § 1983 claim alleging that the SJCDP Defendants "acted jointly" with Shabazz to violate

1

Carrico's rights under the Equal Protection Clause; and (2) Carrico's § 1985(3) claim alleging that the SJCDP Defendants "conspired with Shabazz to suffer and permit Shabazz to deprive" Carrico of her rights under the Equal Protection Clause. [DE 35 at 5, ¶¶ 34-35]. The SJCDP Defendants' Motion to Dismiss contends that Carrico's second amended complaint has not alleged sufficient facts to plead a plausible § 1983 joint action claim or to plead a plausible § 1985(3) conspiracy claim against them.

This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1). For the reasons stated below, the SJCDP Defendants' Motion to Dismiss is **GRANTED.** [DE 37].

I.   **FACTUAL BACKGROUND**

For purposes of the SJCDP Defendants' Motion to Dismiss, the Court accepts the well-pleaded facts from Carrico's second amended complaint as true and draws all reasonable inferences from these facts in her favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Carrico worked as the Republican Deputy Clerk for the Board from February 2018 until her resignation in November 2020. The Board is a governmental unit of the State of Indiana and consists of two members, one from each major political party. Ind. Code chpt. 3-7-12. Members are appointed by the chairman of each respective political party. *See* Ind. Code § 3-7-12-9. Accordingly, the chairman of the SJCDP and the chairman of the St. Joseph County Republican Party ("SJCRP") each appoint a member to the Board. The SJCDP is a corporation with its principal place of business in South Bend, Indiana.

2

As the Republican Deputy Clerk, Carrico's supervisor was the Republican appointee to the Board, Kim Riskovitch ("Riskovitch"). Carrico also worked alongside the Democratic appointee to the Board, Shabazz. As described in Plaintiff's designation, Shabazz's position was a "political patronage job," as he was appointed to the Board by Wruble, the chairman of the SJCDP[1]. As Wruble's appointee, Shabazz served at his pleasure. Ind. Code § 3-7-12-11. Wruble appointed Shabazz "in return for past service to the [SJCDP] and based on the expectation of continued loyalty to the [SJCDP] and to Wruble."

While Carrico and Shabazz worked alongside each other at the Board, Shabazz frequently flirted with Carrico and "made inappropriate remarks of a sexual nature," even after Carrico told Shabazz that she was married and that the remarks made her uncomfortable. Specifically, Shabazz would tell Carrico "she looked 'fine,'" would ask her to kiss him, and would tell her that, if they had only met before she married, they would "now have children together." Shabazz also engaged in similar behavior toward Carrico outside of working hours, calling her on evenings and weekends to discuss work, but ultimately making sexual advances.

Carrico first complained about Shabazz's actions to her supervisor, Riskovitch, who told Shabazz that his behavior was inappropriate and that he needed to stop. However, Shabazz's behavior continued, so Carrico and other employees then complained to the St. Joseph County Human Resources Director, Kim Karkowitz

---

[1] As such, Riskovitch's position would also have been a "political patronage job," as she was appointed by the chair of the SJCRP.

("Karkowitz"). Karkowitz informed Wruble of Shabazz's behavior and asked that Shabazz be disciplined. In addition to this conversation with Karkowitz, Wruble was also contacted by the Chair of the SJCRP, who asked Wruble to remove Shabazz because of his behavior. However, because of Shabazz's service to the SJCDP and his loyalty to Wruble personally, Wruble overlooked Shabazz's conduct towards Carrico and ignored these complaints.

Complaints about Shabazz's behavior eventually "became so prevalent" that on September 25, 2020, Wruble and Shabazz met with Karkowitz at the office of the County Attorney to discuss Shabazz's behavior. At this meeting, Wruble indicated that he would not terminate or suspend Shabazz but agreed to discipline him by having him work from home for two weeks. After these two weeks at home, Shabazz would return to his regular duties at the office, in-person.

When Shabazz returned after two weeks of working from home, Riskovitch went on extended medical leave. Consequently, Carrico resigned rather than continue to work alongside Shabazz without her supervisor present.

## II. LEGAL STANDARD

Under the notice pleading requirements of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint by challenging the legal sufficiency of a claim. *See Hallinan v. Fraternal Order of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In reviewing a motion to dismiss under Rule 12, the court must accept the allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2016); *see also Eastes v. ACS Hum. Servs., LLC*, No. 1:09 CV 203 PPS, 2010 WL 300427, at *2 (N.D. Ind. Jan. 21, 2010).

However, this tenet does not apply to "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* at 662. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 545. Indeed, a complaint that offers "labels or conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Therefore, while "[l]egal conclusions can provide a complaint's framework, [] unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim." *Ledford v. Williams*, No. 1:18-CV-337-HAB, 2019 WL 5727909, at *6 (N.D. Ind. Nov. 5, 2019) (citing *Iqbal*, 556 U.S. at 680). Determining the plausibility of a

claim is context specific and the reviewing court must draw on its own "experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### III. ANALYSIS

#### A. Elements of Carrico's Claims Against the SJCDP Defendants

Carrico alleges claims against the SJCDP Defendants under 42 U.S.C. § 1983 and § 1985(3), stating that the SJCDP Defendants violated her rights and deprived her of her constitutional rights under the Equal Protection clause by conspiring with Shabazz to "deprive her of her federally protected right to be free of workplace sexual harassment." [DE 35 at 5, DE 41 at 4]. Neither § 1983 nor § 1985(3) create independent substantive rights; rather they are a means to "vindicat[e] rights, privileges or immunities that are guaranteed by the U.S. Constitution or a federal statute." *Ledford*, 2019 WL 5727909, at *4 (citing *Narducci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009)).

##### 1. Elements of Carrico's § 1983 Joint Action Claim

Carrico's first claim against the SJCDP Defendants is a joint action conspiracy claim under § 1983, alleging that the SJCDP Defendants acted jointly with Shabazz to violate her rights under the Equal Protection Clause. [DE 35 at 5, ¶ 34]. To state a valid cause of action under § 1983, a plaintiff must allege "(1) that defendants deprived [her] of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). While § 1983 protects citizens from actions by the government or by government officials, it does not, by itself, protect them from conduct by private individuals such as the SJCDP Defendants. *See Eastes*, 2010 WL 300427, at *2. Accordingly, a § 1983 claim can only reach the SJCDP

6

Defendants when they are deemed to act "under color of state law." *Id.* There are several ways to allege that a private actor acted under color of state law, one of which is "joint action" as alleged by Carrico. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

To plead joint action under § 1983, a plaintiff must allege that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of [her] constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019); *Ledford*, 2019 WL 5727909, at *4. In other words, a plaintiff "must establish that a conspiracy, or an understanding, to violate the plaintiff's constitutional rights existed between the public and private actors." *Stagman v. Ryan*, 176 F.3d 986, 1003 (7th Cir. 1999); *Holderman v. Walker*, No. 19 C 6324, 2021 WL 1192441, at *12 (N.D. Ill. Mar. 30, 2021 ("The Seventh Circuit calls this the 'conspiracy theory' of § 1983 liability.")

### 2. Elements of Carrico's § 1985(3) Conspiracy Claim

Carrico's second claim against the SJCDP Defendants is also a conspiracy claim, but under § 1985(3). Section 1985(3) reaches purely private conspiracies and does not require any of the parties involved in the conspiracy to be acting under the color of state law. *Griffin v. Breckenridge*, 403 U.S. 88, 95 (1971). Under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters and Joiners of Am.,*

*Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983); *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992). To plead the second prong, "[t]he plaintiff also must show [1] some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and [2] that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Ledford,* 2019 WL 5727909, at *6 (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)).

### B. Allegations in Carrico's Seconded Amended Complaint

Both Carrico's § 1983 and § 1985(3) claims against the SJCDP Defendants are predicated on the existence of conspiracy between the SJCDP Defendants and Shabazz. The SJCDP Defendants contend that Carrico's second amended complaint fails to plead sufficient facts to show the existence of a conspiracy or the type of conspiracy that is redressable under § 1983 or § 1985(3). Carrico contends that she has sufficiently pled facts detailing the conspiratorial agreement generally and facts documenting the overt acts in furtherance of the conspiracy specifically, relying primarily on *Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985).

#### i. Existence of a Conspiracy

In *Quinones,* the court held that the plaintiff sufficiently pled the existence of a conspiracy as well as facts that showed racially discriminatory animus for his § 1985(3) claim. 771 F.2d at 291. Regarding the existence of a conspiracy, the court reasoned that "[t]he very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement." *Id.* Accordingly, a plaintiff "need not plead specific

8

facts detailing the conspiracy's formation" and "must simply plead sufficient facts from which a conspiracy can be inferred." *Id.* However, *Quinones* also "distinguished the permissible failure to specifically plead facts supporting the formation of a conspiracy from the fatal failure to allege 'any facts that support[] any inference of a conspiratorial agreement.'" *Laporta v. City of Chicago*, No. 95 C 2899, 1997 WL 162840 at *3 (N.D. Ill. Mar. 26, 1997) (internal citation omitted). Accordingly, while "[c]ircumstantial evidence can establish a conspiracy," a plaintiff must still plead sufficient facts to plausibly infer a "meeting of the minds" between two or more individuals. *Holderman,* 2021 WL 1192441, at *12-13.

Courts considering whether a conspiracy exists under § 1983 consider whether the facts alleged show "the parties, general purpose, and approximate date" to support a plausible inference of the existence of a conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006); *Crews v. City of Gary, Ind.*, No. 2:13-CV-292-PPS-PRC, 2014 WL 6474099, at *6 (N.D. Ind. Nov. 19, 2014) (noting it as a "fairly lenient" pleading standard). To plead the existence of a conspiracy under § 1985(3), a plaintiff must allege sufficient facts to show that "the conspirators . . . acted with a single plan, the general nature and scope of which was known to each conspirator." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002); *Browne v. Waldo,* No. 2:20-CV-196-JVB-APR, 2021 WL 325871 at *5 (N.D. Ind. Feb. 1, 2021).

Here, Carrico's seconded amended complaint provides the following components of a conspiracy. Carrico first alleges that Wruble and Shabazz "reached an understanding that in exchange for Shabazz'[s] continued service to the [SJCDP] and for

9

his personal loyalty to Wruble, Wruble would overlook Shabazz'[s] sexual misconduct toward Carrico" and ignored complaints about Shabazz's behavior. [DE 35 at 4]. The statement "reached an understanding" is merely a conclusory allegation regarding the existence of a conspiracy and need not be accepted as true. *See Linda Construction, Inc. v. City of Chicago,* 2016 WL 1020747 at *6 (N.D. Ill. March 15, 2016); *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011); *Iqbal*, 556 U.S. at 681. However, the second amended complaint also contains the following facts regarding the existence of a conspiracy. First, the second amended complaint clearly states the parties to the alleged conspiracy (Wruble and Shabazz). The facts of the complaint plausibly infer that the approximate date of the conspiracy was sometime between Carrico's start with the Board and Wruble and Shabazz's meeting with the St. Joseph County Human Resources Director on September 25, 2020. *See Glenn v. City of Hammond*, No. 2:18-CV-150-TLS-JEM, 2021 WL 4078063 at *14 (N.D. Ind. Sept. 7, 2021) (finding that a general timeframe covering the length of a criminal investigation and trial was sufficient to show approximate date, as plaintiffs could not know "exact dates" at the pleading stage).

Regarding the purpose behind the conspiracy, Carrico's seconded amended complaint alleges that it was to "violate Carrico's rights under the Equal Protection Clause" and to "suffer and permit Shabazz to deprive Carrico of her rights under the Equal Protection Clause . . . " [DE 35 at 5, ¶¶ 34, 35]. While legal conclusions can serve as a framework for the complaint, the facts alleged in the complaint must "move the claims from conceivable to plausible." *Ledford*, 2019 WL 5727909, at *6 (citing *Iqbal,* 556 U.S. at 680). Carrico alleges in the second amended complaint that Wruble overlooked

10

complaints about Shabazz's misconduct in "exchange for Shabazz'[s] continued service to the [SJCDP] and for his personal loyalty to Wruble." [DE 35 at 4, ¶¶ 26-27]. Thus, Carrico has alleged a plausible inference of the existence of a conspiracy, as these facts show the parties to the conspiracy, the timeframe, and the general purpose. However, this alleged purpose of the conspiracy, along with the other facts in the second amended complaint, is where Carrico's conspiracy claims fail to add up under § 1983 and § 1985(3).

### ii. Purpose or Intent of Conspiracy

Carrico further describes the general purpose of the alleged conspiracy in her second amended complaint as follows. According to Carrico, Wruble appointed Shabazz to the Board because of Shabazz's past service and loyalty to the SJCDP and to Wruble personally. Motivated by this loyalty and shared political affiliation, Wruble overlooked Shabazz's sexual misconduct toward Carrico and ignored complaints about Shabazz's behavior. Carrico then alleges that when complaints became so prevalent that Wruble could no longer simply overlook Shabazz's behavior, Wruble and Shabazz attended a meeting with the St. Joseph Human Resources Director to discuss Shabazz's actions. Carrico further avers that at this meeting, Wruble refused to terminate or suspend Shabazz as his political appointee but instead chose to discipline him by just sending him to work from home for two weeks.

From these factual allegations, the plausible and reasonable inference is that the SJCDP Defendants and Shabazz shared a common goal – ostensibly "conspired" – to keep Shabazz on the Board regardless of his improper conduct, including sexual

harassment of Carrico. Carrico also characterizes the conspiracy in this way in response to the instant Motion to Dismiss. [*See* DE 41 at 5–6]. In their reply related to the instant Motion to Dismiss, the SJCDP Defendants even concede that Carrico's characterization of the conspiracy represents the "most" the facts suggest. [DE 42 at 4]. However, a conspiracy with this purpose does not add up to a conspiracy redressable under § 1983 or § 1985(3). Carrico has not alleged facts showing that the SJCDP Defendants had an intent to deprive Carrico of her constitutional rights (as required under § 1983) or that the conspiracy was one with class-based, discriminatory animus that aimed at Carrico's rights (as required under § 1985(3)).

First, under § 1983, the facts must allege a "common, unconstitutional goal." *Burrell v. Mattoon*, 378 F.3d 642, 650 (7th Cir. 2004). Indeed, "[i]t is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Holderman*, 2021 WL 1192441, at *12; citing *Tarkowski v. Robert Barlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980).

Here, a common goal can be plausibly inferred from Carrico's second amended complaint. Yet, Carrico has not alleged any facts to show that this common goal was to violate Carrico's rights. Rather, Carrico's second amended complaint specifically points out that Wruble decided to overlook Shabazz's conduct toward Carrico based on Wruble's personal and political relationship to Shabazz. These facts support an inference of a common goal to honor a political connection or alignment, especially

12

considering that Shabazz's position was a "political patronage job" where he had been appointed personally by Wruble. [DE 35 at 3, ¶¶ 12-13]. However, none of the facts alleged regarding the SJCDP Defendants' conspiracy with Shabazz show any aim at Carrico or Carrico's rights at all. Accordingly, the Court can only plausibly infer that the SJCDP Defendants and Shabazz "directed themselves" toward cronyism, rather than "unconstitutional action" toward Carrico or her rights. *Holderman*, 2021 WL 1192441, at *12. While this agreement may have culminated in a deprivation of Carrico's constitutional rights, Carrico has not alleged facts supporting a plausible inference that the SJCDP Defendants and Shabazz initially shared an unconstitutional goal to cause that deprivation. *See T.S. v. Twentieth Century Fox Television*, No. 16 C 8303, 2017 WL 4620841 at *3-4 (N.D. Ill. Oct. 16, 2017) (finding that while an alleged agreement may have resulted in a deprivation of constitutional rights, because the agreement itself lacked a common, unconstitutional goal, this was not sufficient to plead a § 1983 joint action claim).

The Seventh Circuit has specifically distinguished allegations of a common goal from allegations of a common goal to "trampl[e] upon [a plaintiff's] constitutional rights." *Hanania v. Loren-Maltese*, 212 F.3d 353, 357 (7th Cir. 2000). In *Hanania*, the plaintiff filed a § 1983 joint action claim alleging that her private lawyer and the City of Cicero conspired to violate her constitutional rights after her lawyer had convinced her to sign a settlement agreement with the City that was not in her best interests. *See id.* The court in *Hanania* dismissed these claims, finding that, for the plaintiff's lawyer, the settlement was merely a means to a pecuniary end and that "most that can be said

13

about the [plaintiff's] allegations is that [the lawyer's] actions do not appear to go beyond greed." *Id.* Indeed, "the allegations fail to demonstrate a desire by [the lawyer] to snatch away [plaintiff's] constitutional rights." *Id.; see also T.S.*, 2017 WL 4620841 at *4 (dismissing the plaintiff's § 1983 conspiracy claim because, although the allegations suggested the existence of an agreement, it was not an agreement redressable under § 1983 because it lacked a common, unconstitutional goal); *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1009 (E.D. Wisc. 2010) (dismissing the plaintiff's § 1983 claim alleging that the City of Lake Geneva and two entities conspired to violate its constitutional rights, finding that the "goals of [the parties'] alleged dealings were unrelated to depriving [the plaintiff] of its equal protection rights" and instead were "an alleged goal to profit at [the plaintiff's] expense.").

Section 1985(3) claims also require a pleading of conspiratorial intent. Specifically, § 1985(3) requires that, in addition to pleading the existence of a conspiracy, a plaintiff must show "[1] some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and [2] that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Majeske*, 94 F.3d at 311. The conspirators must be acting "at least in part" because of a plaintiff's membership in a class and the conspiracy must aim at a protected right. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 272, 275 (1993); *see, e.g., Linda Construction*, 2016 WL 1020747, at *3 (noting that a plaintiff must also allege that "in entering the agreement, Defendants intended to discriminate against Plaintiffs and deprive them of their constitutional rights *because of* Plaintiffs' race").

14

Accordingly, a plaintiff "must allege facts specific enough to suggest the existence of this type of motivation underlying Defendant's actions." *Tucovic v. Hogan*, No. 1:10-CV-387-JVB, 2011 WL 3421418 at *4 (N.D. Ind. August 4, 2011)(internal citation omitted). Specifically, "the 'intent to deprive of a right' requirement also demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray,* 506 U.S. at 276.

Here, Carrico fails to allege facts suggesting that the SJCDP Defendants acted at "least in part" because she was a woman or part of another group or that the alleged conspiracy "aimed at" a protected right. *See Bray*, 506 U.S. at 275-76. Rather, the facts alleged by Carrico point to Shabazz's prior service to the SJCDP and to the personal loyalty between Shabazz and Wruble as the motivating factors for Wruble's actions ignoring Shabazz's behavior and imposing minimal discipline on Shabazz. As pled, these facts do not suggest an aim toward Carrico at all. At most, the alleged facts show that this conspiracy had "an effect upon a protected right" of Carrico's. *Id.* at 275. However, this is insufficient to allege a conspiracy under § 1985(3). *Id.*

Such a decision is consistent with those of other courts considering these elements of § 1985(3) conspiracy claims. In *Bray*, the Court found that the actions of anti-abortion protestors in front of an abortion clinic were not redressable as a conspiracy § 1985(3). *Id* at 263. First, the Court found that the protestors' purpose did not "focus[] upon women *by reason of their sex*. . . ." *Id.* at 270. The Court also noted that the protestors, who "intended to protect the victims of abortion, stop its practice, and

15

reverse its legalization" also did not "aim at" a protected right of interstate travel. *Id.* at 275-76. In *James v. City of Evanston*, the plaintiff's § 1985(3) claim contended that race was the reason behind the defendants' decision to obtain a municipal use exemption rather than follow another process that would have required a public hearing. No. 20-cv-00551, 2021 WL 4459508 at *11-12 (N.D. Ill. Sept. 29, 2021). The court dismissed the plaintiff's claim, stating that while the facts, if proved, could show an agreement between the defendants, they "would not support a finding that the two chose that route based on a shared common objective of depriving [the plaintiff] and the class of their right to equal protection of laws." *Id.* at *12; *see also Strauss v. U.S. Postal Serv.*, No. 2:19-CV-423-TLS-JEM, 2021 WL 3129455 at *2 (N.D. Ind. July 23, 2021) (dismissing a § 1985(3) claim because it did not allege that the defendants' actions were motivated by racial or class-based discriminatory animus); *Linda Construction*, 2016 WL 1020747 at *4 (dismissing plaintiffs' § 1985(3) claim because "[n]othing in the Complaint suggests Defendants acted with the requisite racial animus.")[2]

Thus, Carrico's second amended complaint—which, at most, suggests a goal or intent to keep Shabazz on the Board regardless of his sexually harassing behavior that was directed toward Carrico—does not allege a conspiracy with a common, unconstitutional goal or with invidiously discriminatory, class-based animus that aimed at Carrico's rights as required under § 1983 for a joint action or under § 1985(3) for a

---

[2] Although Carrico has not alleged facts that suggest class-based animus toward her because she was the Republican Deputy Clerk, even if the facts supported such an inference, it is not redressable under § 1985(3). The Seventh Circuit has held that § 1985(3) "does not reach nonracial political conspiracies." *See Ghiles v. Municipal Electoral Board/Commissioners of Chicago Heights, Illinois*, No. 19-cv-1775, 2020 WL 919002 at *4 (N.D. Ill. Feb. 26, 2020); *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985).

conspiracy. As such, the Court cannot—taking the facts alleged as true—draw a reasonable inference that the SJCDP Defendants are liable for the misconduct Carrico alleges. *See Iqbal,* 556 U.S. at 662. Accordingly, the SJCDP Defendants' motion to dismiss is granted.[3]

## IV.   CONCLUSION

Based on the foregoing, the SJCDP Defendants' Motion to Dismiss is **GRANTED.** [DE 37]. As the § 1983 joint action and § 1985(3) conspiracy claims are the only claims alleged against them, the SJCDP Defendants (Stan Wruble and the St. Joseph County Democratic Party) are dismissed. The claims against the Board of Commissioners of St. Joseph County, Muhammad Shabazz, and the St. Joseph County Board of Voter Registration remain pending.

**SO ORDERED** this 17th day of December 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

---

[3] The SJCDP Defendants request, without further development or citation to relevant authority, that the Court dismiss Carrico's claims against them with prejudice because this is her second amended complaint. As Carrico did not respond to this request, the Court need not address it.